### General Utilities Corporation *v.* Petrol Corporation, Appellant.

Argued April 14, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Robert T. McCracken,* with him *Cummings & Mc-Hugh,* for appellant.

*Harry Shapiro,* of *Shapiro & Shapiro,* for appellees.

OPINION BY MR. JUSTICE DREW, June 30, 1944:

Plaintiffs, General Utilities Corporation, M. S. Benson and J. J. Greenway, Jr., brought this action in assumpsit against defendant, Petrol Corporation, to recover commissions alleged to be due under a written contract involving the sale of fuel oil. They recovered a verdict for $20,641.14. Defendant's motions for judgment n. o. v. and for a new trial having been discharged, it appealed from the judgment entered on the verdict.

The individual plaintiffs, Benson and Greenway, with others, in 1927 organized the plaintiff corporation for selling and installing fuel oil burners, and in 1934, organized General Utilities Oil Division, Inc., for selling fuel oil. Defendant, a corporation engaged in the sale and distribution of gasoline and oil, on August 25, 1936, entered into a contract with General Utilities Oil Division, Inc., wherein it agreed to sell to Oil Division, Inc., oil at stated fixed prices for each grade based upon what was known as the "posted tank car prices". The testimony shows that in the Philadelphia area prices of fuel oil are kept uniform by an agreement of the major oil companies to base "their prices from time to time upon the prices posted or made known by one of them", and these are known as "posted tank car prices". The agreement of August 25, 1936, was amended on August 27, 1937, as follows: "Prices shall be as hereinafter provided and not as set forth in the said agreement. The prices for the various grades of fuel oil shall be ¼¢ a gallon above The Petrol Corporation's cost price, day's date of delivery, from Gulf Oil Corporation and Cities Service Oil Company. Petrol shall exhibit to you upon request at its office its contracts with and invoices from Gulf and Cities Service, said two companies being the exclusive suppliers of Petrol . . ."

This arrangement continued until June 13, 1939, when plaintiffs and defendant entered into a contract, providing, inter alia, that instead of defendant selling and delivering oil to Oil Division, Inc., which in turn sold and delivered it to its own customers at the market price, defendant would assume the management and control of that company, pay plaintiffs a commission of ½¢ a gallon for deliveries of oil made by defendant to customers procured by plaintiffs and the then and future customers of Oil Division, Inc., and retain and apply one-half of these commissions in liquidation of the debt then owing by Oil Division, Inc., to defendant. This indebtedness, according to defendant's records, was $88,234.26,

and by this new arrangement that amount was ultimately paid in full. Later, however, a controversy arose between plaintiffs and defendant as to the correct amount of the indebtedness, and it was mutually agreed that, at the expense of the parties, the books of defendant should be audited by H. B. Berkowitz, a certified public accountant. At Mr. Berkowitz's request, defendant furnished him with all invoices of Gulf Oil Corporation and Cities Service Company showing the prices those companies charged defendant for oil furnished it from August 27, 1937, to May 31, 1939, the period in question. He compared these invoices with the prices which defendant in turn charged Oil Division, Inc., for oil furnished it on the same dates of delivery. A detailed statement was then prepared by Berkowitz showing every charge made by defendant in excess of ¼¢ a gallon over the amount charged defendant by its suppliers, and in this manner the total overcharge against Oil Division, Inc., was determined to be $25,157. Plaintiffs brought this suit to recover that amount, less $4,515.86 (which plaintiffs alleged was a credit allowed by defendant against the overcharge), on the ground that had the overcharge not been made, they would have received additional commissions from defendant in that amount.

The defendant entered two defenses, first, that the invoices exhibited to Mr. Berkowitz did not reflect the "full cost" to defendant; and second, that in order to compensate defendant for losses sustained in previous years on the sale of gasoline of Cities Service during a price cutting war, the latter company had made defendant an allowance of approximately $200,000, which was payable from time to time to defendant in a reduction in the cost of oil at the rate of ¼¢ a gallon. The defense therefore is that the fuel oil was billed by Cities Service at ¼¢ less than actual "costs"; and that were it not for this allowance, the price shown on the invoices would have been ¼¢ higher.

At the trial, plaintiffs offered in evidence the supplemental contract of August 27, 1937, fixing the price, the

report of Mr. Berkowitz, and all of the invoices from Gulf and Cities Service. Defendant did not dispute the mathematical accuracy of the accountant's report, nor did it question the testimony of Berkowitz that the invoices submitted to him by defendant sustained the contention made with respect to the overcharge.

We agree with the learned court below that the defense that the audit did not reflect "full cost" was unsound. The agreement of August 27, 1937, specifically provided that defendant would furnish fuel oil to Oil Division, Inc., at "¼¢ a gallon above The Petrol Corporation's cost price, day's date of delivery, from Gulf Oil Corporation and Cities Service Oil Company." Under the provisions of that contract, clearly Berkowitz was justified in taking the cost price from the invoices of defendant's suppliers and adding thereto ¼¢ a gallon, and treating any excess as an overcharge. There is nothing in this agreement to indicate that it was the intention of the parties that the price was to be ¼¢ per gallon above the "full cost" or the "market price". Furthermore, no evidence was adduced by defendant to show any other items of cost than that shown on its suppliers' invoices. So that, even if the contract provided for actual cost, defendant did not show any cost to it over what it paid to its suppliers, such as transportation costs, overhead and like expense.

In support of its defense that defendant was given a secret rebate, it called two witnesses who testified that Cities Service Company had made an allowance of ¼¢ a gallon to defendant on fuel oil purchased to compensate it for losses sustained during a gasoline price war while acting as agent of Cities Service. However, from cross-examination of these witnesses and from correspondence between Cities Service and defendant offered by plaintiffs, it was shown that the allowance was not for this purpose, but was a temporary lowering of price to enable defendant to meet competition. Obviously, if the latter reason were the true one, then, in accordance with

the agreement of August 27, 1937, the price should have been reduced correspondingly to plaintiffs. Under the circumstances, it was for the jury to determine what the reason for the allowance actually was.

Also, on cross-examination of one of these witnesses of defendant it was elicited that this secret allowance was not deducted from the invoice price when the fuel oil furnished was billed to defendant by Cities Service, but instead was made by way of a monthly credit based on the gallonage bought by defendant during the month. If that be so, it follows that no matter what the reason for the allowance was it cannot constitute a defense to this claim of plaintiffs, since the overcharge here claimed, as shown by the accountant's report and testimony, was based on the prices shown in the invoices of Cities Service, and not on the lower prices actually paid by defendant. Thus it appears that the invoices did disclose the billing price, but not the real cost to defendant, which was lower than the billing price, and therefore Oil Division, Inc., was overcharged an amount in excess of that found by Berkowitz.

Defendant contends that the court below should have construed the contract of August 25, 1936, as modified by that of August 27, 1937, to mean invoice prices based on "posted tank car prices", and have held that plaintiffs could not recover the $\frac{1}{4}\phi$ differential granted to defendant by Cities Service. We cannot agree with this argument. Under the first of these contracts it was agreed that defendant would sell the oil to plaintiffs at a price based upon "posted tank car prices". However, the second contract provided: "Prices shall be as hereinafter provided and *not as set forth*" in the first agreement. The new basis was $\frac{1}{4}\phi$ per gallon above defendant's "cost price" from its two suppliers. If defendant's contention were sound, the change of basis from "posted tank car prices" as set forth in the earlier contract to "cost price" in the later one would be meaningless. Under such circumstances, the court below committed no

error in charging the jury that so far as the price to be charged Oil Division, Inc., is concerned, the agreement of August 27, 1937, and no other contract, defined the price.

We have carefully considered the other assignments and find no merit in them. The case was fairly tried, the charge of the court was free from any reversible error, and there was ample evidence upon which to support the verdict.

Judgment affirmed.